FILED

2024 Aug-29  PM 02:58
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### JASPER DIVISION

LAUREN L. ROGERS,                )
                                 )
    Plaintiff,              )
                                 )
    v.                      )     Case No. 6:22-cv-01208-NAD
                                 )
SOCIAL SECURITY                  )
ADMINISTRATION,                  )
COMMISSIONER,                    )
                                 )
    Defendant.              )

## MEMORANDUM OPINION AND ORDER REVERSING AND REMANDING THE DECISION OF THE COMMISSIONER

Pursuant to 42 U.S.C. § 405(g), Plaintiff Lauren L. Rogers filed for review of an adverse, final decision of the Commissioner of the Social Security Administration ("Commissioner") on her claim for disability benefits. Doc. 1. Plaintiff Rogers applied for disability benefits with an alleged onset date of October 1, 2017. Doc. 6-4 at 2–5; Doc. 6-6 at 2–12. The Commissioner denied Rogers' claim for benefits. Doc. 6-3 at 2–6, 22–39. In this appeal, the parties consented to magistrate judge jurisdiction. Doc. 8; 28 U.S.C. § 636(c)(1); Fed. R. Civ. P. 73.

After careful consideration of the parties' submissions, the relevant law, and the record as a whole, the court **REVERSES** and **REMANDS** the Commissioner's decision.

## ISSUES FOR REVIEW

In this appeal, Rogers argues that the court should reverse the Commissioner's decision for five reasons: (1) the Administrative Law Judge (ALJ) "failed to properly evaluate and articulate" Rogers' subjective symptoms and account for her pain related limitations; (2) the ALJ "failed to provide an articulate assessment" of the medical opinion of Dr. Eric Bready as required by the applicable regulations; (3) the ALJ failed to resolve an ambiguity in Dr. Bready's opinion; (4) the ALJ "improperly considered" Rogers' daily activities and limitations; and (5) the ALJ erred in finding that Rogers' fibromyalgia was not a medically determinable impairment. Doc. 9 at 19, 22, 25–26, 31.

Because the court will reverse and remand for further consideration of Dr. Bready's opinion, the court need not reach the merits of the other issues that Rogers raised in this appeal.

## STATUTORY AND REGULATORY FRAMEWORK

A claimant applying for Social Security benefits bears the burden of proving disability. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). To qualify for disability benefits, a claimant must show disability, which is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."

42 U.S.C. § 423(d)(1)(A); *see* 20 C.F.R. § 404.1505.

A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

The Social Security Administration (SSA) reviews an application for disability benefits in three stages: (1) initial determination, including reconsideration; (2) review by an ALJ; and (3) review by the SSA Appeals Council. *See* 20 C.F.R. § 404.900(a)(1)–(4).

When a claim for disability benefits reaches an ALJ as part of the administrative process, the ALJ follows a five-step sequential analysis to determine whether the claimant is disabled. The ALJ must determine the following:

(1)     whether the claimant is engaged in substantial gainful activity;

(2)     if not, whether the claimant has a severe impairment or combination of impairments;

(3)     if so, whether that impairment or combination of impairments meets or equals any "Listing of Impairments" in the Social Security regulations;

(4)     if not, whether the claimant can perform his past relevant work in light of his "residual functional capacity" or "RFC"; and,

(5)     if not, whether, based on the claimant's age, education, and work experience, he can perform other work found in the national economy.

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see Winschel v. Commissioner of Soc.*

*Sec. Admin.*, 631 F.3d 1176, 1178 (11th Cir. 2011).

The Social Security regulations "place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work." *Moore*, 405 F.3d at 1211.  At step five of the inquiry, the burden temporarily shifts to the Commissioner "to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform." *Washington v. Commissioner of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (quoting *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)).  If the Commissioner makes that showing, the burden then shifts back to the claimant to show that he cannot perform those jobs.  *Id.*  So, while the burden temporarily shifts to the Commissioner at step five, the overall burden of proving disability always remains on the claimant.  *Id.*

## STANDARD OF REVIEW

The federal courts have only a limited role in reviewing a plaintiff's claim under the Social Security Act.  The court reviews the Commissioner's decision to determine whether "it is supported by substantial evidence and based upon proper legal standards."  *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997).

**A.**    With respect to fact issues, pursuant to 42 U.S.C. § 405(g), the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'"  *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  "Substantial

evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Commissioner of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004).

In evaluating whether substantial evidence supports the Commissioner's decision, a district court may not "decide the facts anew, reweigh the evidence," or substitute its own judgment for that of the Commissioner. *Winschel*, 631 F.3d at 1178 (citation and quotation marks omitted); *see Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (similar). If the ALJ's decision is supported by substantial evidence, the court must affirm, "[e]ven if the evidence preponderates against the Commissioner's findings." *Crawford*, 363 F.3d at 1158 (quoting *Martin*, 894 F.2d at 1529).

But "[t]his does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden*, 672 F.2d at 838 (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)); *see Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987). "The ALJ must rely on the full range of evidence . . . , rather than cherry picking records from single days or treatments to support a conclusion." *Cabrera v. Commissioner of Soc. Sec.*, No. 22-13053, 2023 WL 5768387, at *8 (11th Cir. Sept. 7, 2023).

**B.**     With respect to legal issues, "[n]o . . . presumption of validity attaches

to the [Commissioner's] legal conclusions, including determination of the proper standards to be applied in evaluating claims." *Walker*, 826 F.2d at 999.  And the Commissioner's "failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius v. Sullivan*, 936 F.2d 1143, 1145–46 (11th Cir. 1991).

## BACKGROUND

### A.     Rogers' personal and medical history

Rogers was born October 17, 1988.  Doc. 6-4 at 2, 4.  Rogers suffers from Peutz-Jeghers syndrome, which causes abdominal polyps and other health issues. *See, e.g.*, Doc. 6-8 at 33, 62, 77; Doc. 6-9 at 84, 166; Doc. 6-11 at 24; Doc. 6-14 at 22, 105; Doc. 6-15 at 11, 29, 111.  She also suffers from chronic kidney stones.  *See, e.g.*, Doc. 6-8 at 33, 68; Doc. 6-9 at 166; Doc. 6-12 at 12.  Rogers' medical records show an extensive history of surgeries for various concerns, including abdominal issues and sinus issues.  *See, e.g.*, Doc. 6-8 at 5–7, 22, 25, 46–47, 122–23; Doc. 6-9 at 18, 35, 167; Doc. 6-11 at 57, 82; Doc. 6-13 at 23; Doc. 6-14 at 22; Doc. 6-15 at 29, 127.

Rogers' medical records also show a long history of complaints of abdominal pain and attempts to treat her pain through various methods, including different medications.  *See, e.g.*, Doc. 6-8 at 8–10, 18–21, 51, 72, 84, 98–106, 117, 136; Doc.

6-9 at 3, 10, 24, 48; Doc. 6-11 at 87, 113; Doc. 6-13 at 102; Doc. 6-14 at 108, 132; Doc. 6-15 at 123.  Her records show a history of nausea and vomiting associated with abdominal pain, as well as anemia.  *See, e.g.*, Doc. 6-8 at 88–92; Doc. 6-9 at 54–55; Doc. 6-11 at 34, 125; Doc. 6-14 at 105; Doc. 6-15 at 36, 88.  Rogers' records also show a history of back pain and some leg pain and numbness.  *See, e.g.*, Doc. 6-9 at 148–50, 182; Doc. 6-11 at 137–38; Doc. 6-12 at 43–44; Doc. 6-13 at 55, 120, 129; Doc. 6-14 at 3, 44.  Rogers has been diagnosed with attention deficit disorder (ADD), and her records show issues with depression and anxiety.  *See, e.g.*, Doc. 6-11 at 24; Doc. 6-13 at 116; Doc. 6-14 at 2, 9, 23, 41, 49, 151; Doc. 6-15 at 29, 75. She has been diagnosed with and treated for fibromyalgia.  *See*, *e.g.*, Doc. 6-13 at 102, 145; Doc. 6-14 at 7, 23, 35, 58, 110; Doc. 6-15 at 46, 55, 71, 123.

On May 20, 2020, Rogers submitted an adult function report.  Doc. 6-7 at 38–45.  Rogers noted that she was documenting her symptoms for a typical "bad day," and stated that she suffered from nausea, vomiting, pain, and depression that kept her in bed all day.  Doc. 6-7 at 38.  She stated that she took care of her child when she was able, but that her family helped her when she was not able.  Doc. 6-7 at 39. Similarly, she stated that she could sometimes perform household tasks on good days, but often had help from her family.  Doc. 6-7 at 39–42.  Rogers stated that her impairments affected her ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, remember, complete tasks, concentrate, understand, follow instructions,

and get along with others.  Doc. 6-7 at 43.

On August 10, 2020, psychologist Jon Rogers, Ph.D., conducted a psychological evaluation of Rogers.  Doc. 6-15 at 11–16.  Dr. Rogers examined Rogers, and opined that Rogers had a moderate-to-severe level of mental impairment and that her ability to understand, remember, and carry out instructions and her ability to respond appropriately to supervision would be moderately impaired.  Doc. 6-15 at 11–16.  Dr. Rogers opined that Rogers' ability to respond appropriately to work pressures in a work setting would be severely impaired.  Doc. 6-15 at 16.

On September 12, 2020, Dr. Eric Bready performed a consultative examination of Rogers.  Doc. 6-15 at 18–24.  Dr. Bready noted that Rogers suffered from Peutz-Jeghers syndrome, chronic pain, fibromyalgia, back pain, and ADD.  Doc. 6-15 at 18.  Dr. Bready noted Rogers' medical history, including previous surgeries, history of anemia, and history of anxiety and depression.  Doc. 6-15 at 19–20, 22–23.  Dr. Bready's physical examination of Rogers was grossly normal, as was a mental status screening.  Doc. 6-15 at 20–22.  Dr. Bready noted that Rogers' chronic pain was "somewhat controlled" with medication.  Doc. 6-15 at 22–23.  Dr. Bready noted that, due to her Peutz-Jeghers syndrome, Rogers sporadically suffered from chronic dehydration, chronic nausea and vomiting, and stomach pain—which were helped "a little" by over the counter medication—as well as chronic anemia, kidney stones, and sinus issues.  Doc. 6-15 at 23.

Dr. Bready opined that, "[b]ased on the available medical history and objective clinical findings, this claimant has limitations."  Doc. 6-15 at 23.  Dr. Bready opined that, based on the results of that day's examination, Rogers seemed well and able to work, but that her history suggested that she was "at risk for multiple malignancies and complications related to adhesions from prior surgeries."  Doc. 6-15 at 23.  Dr. Bready opined that "[f]rom a pain standpoint she has limitation in standing and is able to stand continuously in an 8 hour workday," that "[s]he has limitation in sitting and is able to sit continuously in an 8 hour workday," that "she has limitation in walking and is able to walk continuously in an 8 hour workday," and that "she has limitation with concentration in the setting of ADD."  Doc. 6-15 at 23.

## B.    Social Security proceedings

### 1.    Initial application and denial of benefits

In February 2020, Rogers filed applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) due to Peutz-Jeghers syndrome, back issues, stomach issues, depression, anxiety, ADHD, and several other conditions, with an alleged onset date of October 1, 2017.  Doc. 6-4 at 2–5; Doc. 6-6 at 2–12.  On September 16, 2020, Rogers' applications were denied at the initial level based on a finding that she could perform medium work and was not disabled.  Doc. 6-4 at 2–43.

On October 21, 2020, Rogers requested reconsideration of the initial denials of her applications for benefits.  Doc. 6-5 at 28.  On January 20, 2021, Rogers' applications were denied at the reconsideration level based on a finding that she could perform medium work and was not disabled.  Doc. 6-3 at 44–95.

On February 1, 2021, Rogers requested a hearing before an ALJ.  Doc. 6-5 at 43–44.

### 2.    ALJ hearing

On September 7, 2021, the ALJ conducted a telephonic hearing on Rogers' application for benefits.  Doc. 6-3 at 48–49.

Rogers testified that she had moved in with her father and sister because they helped her every day with household chores and with childcare.  Doc. 6-3 at 52. Rogers testified that she had good days and bad days, with about three good days per week, and that she could do things like prepare meals and do household chores on good days, but still had difficulty.  Doc. 6-3 at 53.  Rogers testified that the day that she had her consultative evaluation with Dr. Bready was a good day.  Doc. 6-3 at 54.  She testified that she had about four bad days per week and on her bad days she stayed in bed all day and could not do any chores because she was nauseated, vomiting, and in pain.  Doc. 6-3 at 54.

Rogers testified that she had a history of abdominal surgeries, with 14 abdominal surgeries and 34 surgeries in total.  Doc. 6-3 at 55, 60–61.  She testified

that she had back pain and had trouble understanding and following instructions, as well as trouble focusing due to ADHD.  Doc. 6-3 at 58–59.  She testified that she had excessive daytime sleepiness that caused problems driving.  Doc. 6-3 at 59–60.  She testified that she was in constant pain at a level that ranged anywhere from about a 5 out of 10 to an 8 or 9 out of 10.  Doc. 6-3 at 61–62.  She testified that she took pain medication that had side effects including drowsiness.  Doc. 6-3 at 62.

Vocational Expert (VE) Robert Piper then testified that a hypothetical individual with Rogers' age, education, work experience, and RFC (residual functional capacity) would not be able to perform Rogers' past relevant work.  Doc. 6-3 at 66–67.  However, VE Piper testified that such a hypothetical individual with the limitations posed by the ALJ could perform jobs classified as medium work that existed in significant numbers in the national economy.  Doc. 6-3 at 67–68.  VE Piper testified that an individual could not take unscheduled breaks every day or miss two or more days of work per month and remain employed.  Doc. 6-3 at 68–69.

### 3.   ALJ decision

On October 6, 2021, the ALJ entered an unfavorable decision.  Doc. 6-3 at 22–39.  The ALJ found that Rogers "has not been under a disability within the meaning of the Social Security Act from October 1, 2017, through the date of this decision."  Doc. 6-3 at 26.

In the decision, the ALJ applied the five-part sequential test for disability (*see* 20 C.F.R. §§ 404.1520(a), 416.920(a); *Winschel*, 631 F.3d at 1178). Doc. 6-3 at 26–27. The ALJ found that Rogers met the insured status requirements through March 31, 2021, and had not engaged in substantial gainful activity since October 1, 2017, the alleged onset date. Doc. 6-3 at 28. The ALJ found that Rogers had severe impairments of Peutz-Jeghers syndrome, hypertension, anemia, an attention deficit hyperactivity disorder, depression, anxiety, and a somatic symptom disorder. Doc. 6-3 at 28. The ALJ also found that Rogers suffered from non-severe impairments of lumbar radiculopathy, muscle spasms, restless leg syndrome, joint problems, carpal tunnel syndrome, and chronic renal stones. Doc. 6-3 at 28–29. The ALJ found that the record showed that Rogers' complaints and diagnoses of fibromyalgia did not qualify as a medically determinable impairment. Doc. 6-3 at 29. In analyzing the severity of Rogers' non-severe impairments, the ALJ included a brief summary of the consultative examination results from Dr. Bready. Doc. 6-3 at 28. The ALJ determined that Rogers did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in the applicable Social Security regulations. Doc. 6-3 at 29–31.

The ALJ determined Rogers' RFC, finding that Rogers had the capacity to perform "medium work" as defined in the applicable regulations, except that Rogers could frequently balance, stoop, kneel, crouch, and crawl, could frequently climb

ramps and stairs, should avoid climbing ladders, ropes, and scaffolds, should avoid unprotected heights, could have occasional interaction with the public, coworkers, and supervisors, and could handle occasional changes in work setting.  Doc. 6-3 at 31–32.

In making the RFC finding, the ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," according to the requirements of 20 C.F.R. § 404.1529 and SSR (Social Security Ruling) 16-3p.  Doc. 6-3 at 32.  The ALJ also stated that the ALJ had "fully" considered the medical opinions and prior administrative medical findings.  Doc. 6-3 at 32.

The ALJ provided a summary of Rogers' alleged inability to work and her testimony about her limitations.  Doc. 6-3 at 32–33.  The ALJ applied the pain standard and determined that Rogers' medically determinable impairments could reasonably be expected to cause some of her alleged symptoms, but that her statements concerning the intensity, persistence, and limiting effects of her symptoms were "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."  Doc. 6-3 at 33. The ALJ then summarized Rogers' medical records regarding her physical impairments, including a discrete paragraph summarizing in detail the report from the September 2020 consultative examination of Dr. Eric Bready.  Doc. 6-3 at 34.

13

The ALJ then analyzed and addressed the "specific physical opinion evidence."  Doc. 6-3 at 34.  The ALJ found that physical opinions that were submitted by two agency consultants were "persuasive" because "they are both well supported by specific evidentiary examples, consistent with the evidence available at that time, and are generally consistent with the overall evidence of record, including evidence submitted later."  Doc. 6-3 at 34.

The ALJ then addressed Dr. Bready's opinion and stated, in total:

> The undersigned also notes that the report from Dr. Bready's September 2020 consultative examination includes an opinion that the claimant has limitations but is able to stand, sit, and walk continuously in an eight-hour workday (Exhibit 31F).  Although noting limitations and then indicating that the claimant is able to continuously sit, stand, and walk appears internally inconsistent.  However, from a physical standpoint, this opinion paints a picture of the claimant's broad range of physical abilities.  Accordingly, it is somewhat persuasive.

Doc. 6-3 at 34–35.

The ALJ then moved on to an examination of Rogers' mental impairments, summarizing the medical records of her mental complaints.[1]  Doc. 6-3 at 35–36.  The ALJ considered the mental opinion evidence and found that one agency opinion was "somewhat persuasive" because there was "no evidence in the record" to support specific limitations that were not consistent with other examination findings, that one agency opinion was "persuasive" because it was "well supported by specific

---

[1] The Commissioner acknowledges in briefing that Dr. Bready did not provide a medical opinion regarding Rogers' mental impairments.  Doc. 10 at 14–15.

evidentiary examples, consistent with the evidence available at the time, and generally consistent with the overall evidence of record," and that the opinion of Dr. Rogers was "not persuasive" because it was "not supported by Dr. Rogers' relatively normal mental status examination" and was "inconsistent with the other relatively normal mental status examinations in the record." Doc. 6-3 at 36–37.

The ALJ found that the overall evidence in the record did not show a disabling loss of function. Doc. 6-3 at 37. The ALJ found that Rogers was unable to perform any past relevant work, but that—considering Rogers' age, education, work experience, and RFC, along with the testimony of the VE—there existed jobs in significant numbers in the national economy that Rogers could perform. Doc. 6-3 at 37–38. Accordingly, the ALJ found that Rogers had not been disabled, as defined in the Social Security Act, from October 1, 2017 (the alleged onset date), through the date of the decision. Doc. 6-3 at 38–39.

### 4.    Appeals Council decision

Rogers belatedly requested review of the ALJ's decision from the Appeals Council. Doc. 6-3 at 13–18. Rogers submitted a good-cause letter explaining the delay (Doc. 6-5 at 2–5), and the Appeals Council allowed Rogers more time to submit information for her appeal. Doc. 6-3 at 8.

On July 14, 2022, the Appeals Council denied Rogers' request for review of the ALJ's October 6, 2021 decision, finding no reason to review the ALJ's decision.

Doc. 6-3 at 2–6.  Because the Appeals Council found no reason to review the ALJ's decision, the ALJ's decision became the final decision of the Commissioner.

## DISCUSSION

Having carefully considered the record and briefing, the court will reverse and remand because the ALJ improperly evaluated Dr. Bready's opinion, and the error was not harmless.  The court will pretermit consideration of the other issues that Rogers raised in this appeal.

**I.    The legal standard for evaluating a medical opinion requires an ALJ to assess the supportability and consistency of the opinion.**

The legal standard for evaluating a medical opinion requires an ALJ to assess the supportability and consistency of the medical opinion.  The SSA has revised its regulations on the consideration of medical opinions for all claims filed on or after March 27, 2017—like the claim in this case.  Under those revised regulations, an ALJ need not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)," including the opinion of a treating or examining physician.  20 C.F.R. §§ 404.1520c(a), 416.920c(a).  And the Eleventh Circuit has concluded that the SSA's new regulations validly abrogated the so-called "treating-physician rule," such that an ALJ no longer is required to defer to the medical opinion of a treating physician.  *See Harner v. Social Sec. Admin., Comm'r*, 38 F.4th 892 (11th Cir. 2022).

Instead, the ALJ considers the persuasiveness of a medical opinion according

16

to the following five factors:  (1) supportability; (2) consistency; (3) the relationship with the claimant, including the length of the treatment relationship, the frequency of examinations, and the purpose and extent of the treatment relationship; (4) specialization; and (5) other factors, including evidence showing that the medical source has familiarity with other evidence or an understanding of the SSA's policies and evidentiary requirements.  20 C.F.R. §§ 404.1520c(c), 416.920c(c).

Supportability and consistency are the most important factors, and the ALJ must explain how the ALJ considered those factors.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

"Supportability" requires an ALJ to consider that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion[] or prior administrative medical finding[], the more persuasive the medical opinion[] or prior administrative medical finding[] will be."  20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).

"Consistency" requires an ALJ to consider that "[t]he more consistent a medical opinion[] or prior administrative medical finding[] is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion[] or prior administrative medical finding[] will be."  20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

The ALJ may explain how the ALJ considered the other factors, but the ALJ

is not required to do so.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

## II.    The ALJ did not adequately explain the consideration of the consistency of Dr. Bready's opinion, as required by the applicable regulations.

Here, the ALJ's decision shows that under the new, revised regulations the ALJ did not adequately consider and explain the consistency of Dr. Bready's opinion.  While the ALJ (arguably) may have adequately explained the consideration of the supportability factor, the ALJ did not explain the consideration of the consistency factor at all.

In this case, Dr. Bready examined Rogers and noted in his examination notes that she suffered from several chronic conditions, including chronic pain that was only "somewhat controlled" and conditions like chronic nausea, vomiting, and kidney stones.  Doc. 6-15 at 18–24.  Dr. Bready opined that, based on Rogers' medical history and his examination findings, Rogers "has limitations" and opined that—while she functionally "seem[ed] well and able to work" during her examination—she also previously had undergone several significant abdominal surgeries and was at risk for continued complications.  Doc. 6-15 at 23.  Dr. Bready opined that "[f]rom a pain standpoint she has limitation in standing and is able to stand continuously in an 8 hour workday," that "[s]he has limitation in sitting and is able to sit continuously in an 8 hour workday," that "she has limitation in walking and is able to walk continuously in an 8 hour workday," and that "she has limitation with concentration in the setting of ADD."  Doc. 6-15 at 23.

According to the applicable regulations, the ALJ had to consider and explain the supportability and consistency of Dr. Bready's opinion.   20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).   The ALJ found Dr. Bready's opinion "somewhat persuasive."  Doc. 6-3 at 35.  As noted above, the ALJ's explanation of the persuasiveness of Dr. Bready's opinion consists, in its entirety, of the following:

> The undersigned also notes that the report from Dr. Bready's September 2020 consultative examination includes an opinion that the claimant has limitations but is able to stand, sit, and walk continuously in an eight-hour workday (Exhibit 31F).  Although noting limitations and then indicating that the claimant is able to continuously sit, stand, and walk appears internally inconsistent.  However, from a physical standpoint, this opinion paints a picture of the claimant's broad range of physical abilities.  Accordingly, it is somewhat persuasive.

Doc. 6-3 at 34–35.

The ALJ's assessment of Dr. Bready's opinion and decision to find that opinion "somewhat persuasive" lack any clear consideration of Dr. Bready's own examination findings or of the rest of the record.  Arguably, notwithstanding that the ALJ did not use any variation of the term "supportability," the ALJ addressed the supportability of Dr. Bready's opinion by finding the internal inconsistency in the opinion.  As discussed above, consideration of the supportability factor requires an ALJ to analyze the medical evidence and supporting explanations of the source offering a medical opinion, such that the more relevant the supporting evidence is, the more persuasive the medical opinion will be.  20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).  The ALJ does not mention Dr. Bready's examination findings in

the discussion of the persuasiveness of the opinion, but does flag an inconsistency in Dr. Bready's explanation. Doc. 6-3 at 35. Further, earlier in the ALJ's decision, the ALJ did include more complete, though isolated, summaries of Dr. Bready's examination and report. Doc. 6-3 at 28, 34.[2] Thus (at least arguably), the ALJ adequately addressed the supportability of Dr. Bready's opinion.

Nevertheless, the ALJ's assessment of Dr. Bready's opinion in the ALJ's decision gives no indication that the ALJ considered the consistency of the opinion, much less any adequate explanation regarding the consistency factor. *See* 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). Again (as discussed above), consideration of the consistency factor requires the ALJ to compare the medical opinion to "the

---

[2] "The record also includes the report from the September 2020 consultative examination performed by Eric Bready, M.D. (Exhibit 31F). At that time, the claimant complained of Peutz-Jeghers syndrome, chronic pain, hypertension, anemia, and problems walking, standing, and lifting. The report also notes, however, that she denied using an ambulatory device and was able to climb stairs and turn a doorknob. Dr. Bready's report also details many relatively normal examination findings, including normal blood pressure readings, ambulation with a normal gait and without use of ambulation aids, no back spasms, negative straight leg raise tests, normal musculoskeletal system range of motion, lungs that were clear to auscultation, normal breathing, a regular heart rate and rhythm, no organomegaly, and demonstrated abilities to walk, tandem walk, squat and rise, bend to touch her toes, and get in/out of a chair and on/off the examination table without difficulty (Exhibit 31F)." Doc. 6-3 at 34; *see also* Doc. 6-3 at 28 ("Likewise, although the report from the September 2020 consultative examination notes a positive straight leg raise test for discomfort, it also details demonstrated abilities to tandem walk, squat and rise, bend to touch her toes, get in and out of a chair, get on and off the examination table, and ambulate with a normal gait and no ambulatory aid (Exhibit 31F). The claimant further noted at the consultative examination that she was able to climb stairs and turn a doorknob (Exhibit 31F).").

evidence from other medical sources and nonmedical sources in the claim," such that the more consistent the opinion is with other evidence in the record, the more persuasive the opinion will be.  20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).  The paragraph in the ALJ's decision finding Dr. Bready's opinion somewhat persuasive includes no reference to any other record evidence; rather that paragraph notes inconsistency within Dr. Bready's own opinion and finds that the opinion itself "paints a picture of [Rogers'] broad range of physical abilities."  Doc. 6-3 at 34–35.

In addition, while the ALJ does include two summaries of Dr. Bready's examination findings elsewhere in the decision, both of those summaries address Dr. Bready's findings in isolation and provide no discussion, explanation, analysis, or comparison of the consistency of Dr. Bready's findings and opinion with any other evidence in the record.  *See* Doc. 6-3 at 28, 34.

Likewise, the other citations to Dr. Bready's examination notes elsewhere in the ALJ's decision are included in string citations or in analyzing the mental opinion evidence, and do not discuss the consistency of Dr. Bready's physical opinion with respect to the other evidence in the record.  *See* Doc. 6-3 at 28–31, 34–36.

Tellingly, the ALJ's assessment of other medical opinions in the ALJ's decision demonstrates that the ALJ did not include any adequate explanation of consistency with respect to Dr. Bready's opinion.  For example, the ALJ explicitly found that physical opinions from two agency consultants were "persuasive"

because "they are both well supported by specific evidentiary examples, consistent with the evidence available at that time, and are generally consistent with the overall evidence of record, including evidence submitted later." Doc. 6-3 at 34.

With respect to mental opinions, the ALJ found that one mental opinion from an agency consultant was "somewhat persuasive" because there was "no evidence in the record" to support specific limitations that were not consistent with other examination findings (Doc. 6-3 at 36), and found that another mental opinion from an agency consultant was "persuasive" because it was "well supported by specific evidentiary examples, consistent with the evidence available at the time, and generally consistent with the overall evidence of record" (Doc. 6-3 at 36). The ALJ found that the mental opinion of Dr. Rogers was "not persuasive" because it was "not supported by Dr. Rogers' relatively normal mental status examination" and was "inconsistent with the other relatively normal mental status examinations in the record." Doc. 6-3 at 37. Each of those assessments in the ALJ's decision demonstrates that the ALJ considered and explained the supportability and consistency of the respective medical opinion, all of which highlights the absence of any discussion of the ALJ's consideration of the consistency factor with regard to Dr. Bready's opinion.

The Commissioner argues that the ALJ properly articulated findings as to supportability and consistency because the ALJ noted that Dr. Bready's opinion was

internally inconsistent, and because "the ALJ also considered that Dr. Bready's opinion was inconsistent with the objective evidence from other providers."  Doc. 10 at 13–14.  As discussed above, the ALJ's mention of the internal inconsistency in Dr. Bready's opinion arguably provides an adequate explanation of the ALJ's assessment of the supportability factor.  *See supra*.

But, on the consistency analysis, the Commissioner points only to findings in the record that the ALJ cited elsewhere in the decision, and that—to be sure—the ALJ *might* have considered with regard to the consistency of Dr. Bready's opinion. What the Commissioner does not (and cannot) identify anywhere in the ALJ's decision—much less in the paragraph addressing the persuasiveness of Dr. Bready's opinion—is any point at which the ALJ actually addresses how Dr. Bready's opinion compares or relates to other evidence in the record.  Without more, this court cannot infer the consistency analysis that is missing from the ALJ's decision.  *See, e.g.*, *Baker v. Commissioner of Soc. Sec.*, 384 F. App'x 893, 896 (11th Cir. 2010) ("[T]he Supreme Court has held that a court may not accept appellate counsel's post hoc rationalizations for agency actions." (citing *FPC v. Texaco Inc.*, 417 U.S. 380, 397 (1974))).

Furthermore, the ALJ's lack of assessment of the consistency factor on Dr. Bready's opinion was not harmless.  As a preliminary matter, the ALJ's finding that Dr. Bready's opinion was "somewhat persuasive," without any apparent analysis of

the consistency factor, leaves the court guessing as to what aspects of Dr. Bready's opinion the ALJ found persuasive and how the ALJ may have accounted for those persuasive aspects of the opinion in assessing Rogers' RFC. *See, e.g.*, *Winschel*, 631 F.3d at 1179 ("[W]hen the ALJ fails to 'state with at least some measure of clarity the grounds for his decision,' we will decline to affirm 'simply because some rationale might have supported the ALJ's conclusion.'" (quoting *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984))).  Without more, the ALJ's decision does not include "sufficient reasoning" for the court to determine that the ALJ properly assessed Rogers' RFC. *See, e.g.*, *Cornelius*, 936 F.2d at 1145–46 (the ALJ's "failure to . . . provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal").

Nor can the court in this case conclude that substantial evidence supported the ALJ's RFC determination.  That is because this court cannot "decide the facts anew, reweigh the evidence," or substitute its own judgment for that of the Commissioner, which means that the court cannot independently assess how Dr. Bready's opinion should (or should not) have impacted the ALJ's determination of Rogers' RFC or the ALJ's conclusion to deny benefits. *Winschel*, 631 F.3d at 1178 (citation and quotation marks omitted); *see also Armstrong v. Commissioner of Soc. Sec.*, 546 F. App'x 891, 896 (11th Cir. 2013) (reversing and remanding where it was "unclear whether the ALJ applied the proper legal standards or whether [the ALJ's] finding

24

at step three was supported by substantial evidence").

For instance, Dr. Bready's opinion noted that, while Rogers appeared well on the date of her examination, she was "at risk for multiple malignancies and complications related to adhesions from prior surgeries." Doc. 6-15 at 23. The court cannot say whether or how the ALJ assessed this aspect of Dr. Bready's opinion in relation to the other record evidence of Rogers' prior surgeries, or whether the ALJ considered that this aspect of the opinion may suggest that Rogers may have been required to miss more than two days of work per month, which—based on VE Piper's testimony, Doc. 6-3 at 68–69—may have precluded employment. *See* Doc. 6-3 at 68–69. In this regard, the record does include ample evidence of Rogers' prior surgeries and pain. *See, e.g.*, Doc. 6-8 at 5–7, 8–10, 18–22, 25, 46–47, 51, 72, 84, 98–106, 117, 122–23, 136; Doc. 6-9 at 3, 10, 24, 18, 35, 48, 167; Doc. 6-11 at 57, 82, 87, 113; Doc. 6-13 at 23, 102; Doc. 6-14 at 22, 108, 132; Doc. 6-15 at 29, 123, 127. Thus, the court cannot conclude that the absence of a consistency analysis was harmless where an assessment of the persuasiveness of Dr. Bready's opinion relative to the other record evidence—which is required by the regulations—may or may not have resulted in a finding of disability. *See, e.g.*, *Clark v. Kijakazi*, No. 5:20-CV-105, 2022 WL 509671, at *6 (S.D. Ga. Jan. 31, 2022), *report and recommendation adopted*, 2022 WL 509114 (Feb. 18, 2022) (collecting cases).

Finally, this memorandum opinion should not be read to include any

conclusion or even commentary on whether, on remand, the ALJ should find Dr. Bready's opinion persuasive or not. Indeed, there may be an easy fix for the Commissioner on remand, as there may be ample evidence to support the determination that Dr. Bready's opinion is partially persuasive. But without sufficient analysis and explanation of the consistency factor as applied to Dr. Bready's opinion (according to the proper legal standards), this court cannot appropriately exercise meaningful judicial review of the ALJ's decision on the question whether the ALJ's determination of the persuasiveness of Dr. Bready's opinion was supported by substantial evidence. *See Lewis*, 125 F.3d at 1439.

### III. The court pretermits consideration of the other issues that Rogers raised in this appeal.

Because the court will reverse and remand for further consideration of Dr. Bready's opinion (*see supra* Part II), the court pretermits consideration of the other issues that Rogers raised in this appeal. As noted above, Rogers also has argued that the ALJ erred by failing to properly evaluate Rogers' symptoms and limitations, improperly considering Rogers' daily activities and limitations, and finding that Rogers' fibromyalgia was not a medically determinable impairment. Doc. 9.

But the court need not—and will not—reach these issues. *See Demenech v. Secretary of Dep't of HHS*, 913 F.2d 882, 884 (11th Cir. 1990) (per curiam) (court need not consider other issues when remanding); *accord Jackson v. Bowen*, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986) (per curiam).

**CONCLUSION**

For the reasons stated above (and pursuant to 42 U.S.C. § 405(g)), the Commissioner's decision is **REVERSED** and **REMANDED** for further proceedings consistent with this memorandum opinion. The court separately will enter final judgment.

**DONE** and **ORDERED** this August 29, 2024.

_____
**NICHOLAS A. DANELLA**
UNITED STATES MAGISTRATE JUDGE